UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WAYNE ERICH SURA, JR.,

      Plaintiff,

  v.                                                       Case No. 15-CV-623

WARDEN PAUL KEMPER, et al.,

      Defendants.

## ORDER

Wayne Erich Sura, Jr., a *pro se* plaintiff, filed an action pursuant to 42 U.S.C. § 1983, alleging that his civil rights were violated. Judge James D. Peterson of the Western District of Wisconsin (the judge assigned to the case at the time) screened Sura's complaint pursuant to 28 U.S.C § 1915A(a) and allowed him to proceed with his claims that defendants Paul Kemper, Ronald Malone, Jason Aldana, and Susan Nygren were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the U.S. Constitution. The case was transferred to this court on May 22, 2015.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. The case was assigned to this court according to the

random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rules 72 (E.D. Wis.), and the parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73 (E.D. Wis.). The case is presently before the court on the defendants' motion for summary judgment. (ECF No. 34.)

## I. RELEVANT FACTS

The facts in this section are primarily taken from "Defendants' Proposed Findings of Fact." (ECF No. 36.) Sura responded to only some of the defendants' proposed facts; those that he did not respond to are admitted for the purpose of deciding summary judgment. See Civil Local Rule 56(b)(4). Additional facts are taken from Sura's sworn complaint (ECF No. 1), which the United States Court of Appeals for the Seventh Circuit has instructed district courts to construe as an affidavit at the summary judgment stage. *Ford v. Wilson*, 90 F.3d 245, 246-47 (7th Cir. 1996).

Sura, a Wisconsin Department of Corrections (DOC) inmate, was housed at Racine Correctional Institution (Racine) at all times relevant to his complaint. (ECF No. 36 ¶ 1.) All of the defendants were employed by the Wisconsin DOC at Racine: Kemper was the warden (ECF No. 36 ¶ 3); Malone was the deputy warden (ECF No. 36 ¶ 4); Aldana was the security director (ECF No. 36 ¶ 5); and Nygren was the health services manager (ECF No. 36 ¶ 6).

On February 27, 2014, Sura submitted a psychological service request (PSR) indicating that he "would like to get back on his meds." (ECF No. 50-1 at 24.) Sura explained that he had "anxiety and depression" and that he couldn't sleep because his mind raced and he tossed and turned. (*Id*.) He stated, "I used to take these meds at Waupun and they really helped me. I would like to resume them." (*Id*.)

On March 3, 2014, an unidentified staff member returned the PSR to Sura and instructed him to submit a health services request (HSR) because he was requesting psychiatric medication, which could be prescribed only by a psychiatrist in the health services unit. (ECF No. 50-1 at 24; ECF No. 36 ¶ 17.) The next day, Sura submitted an HSR requesting that he be placed back on his meds. (ECF No. 36 ¶ 38.) On March 5, 2014, an unidentified staff member noted on the bottom of Sura's HSR, "forwarded to psychiatrist for review/Appt. Schedule." (ECF No. 50-1 at 1.) On March 6, 2014, Sura informed an unidentified psychological services unit staff member who was making rounds that he would like to restart his medication. (ECF No. 36 ¶ 40.)

On April 30, 2014, Sura submitted interview/information request forms to Kemper, Malone, Aldana, and Nygren. (ECF No. 50-1 at 11, 12; ECF No. 1-1 at 4-5; ECF No. 1 at 1.) The requests were generally the same. In each, Sura explained that he had been waiting for two months to be scheduled for an appointment. (*Id*.) He stated that he had mental health problems, wanted to get back on his meds, and needed help. (*Id*.)

None of the defendants were personally involved in any decision to provide psychological or psychiatric care for Sura. (ECF No. 36 ¶¶ 74, 86, 94, 101.) Kemper and Malone state that they never would have undertaken an investigation on their own into Sura's claims, as they delegate tasks such as those to personnel better positioned to handle them. (ECF No. 36 ¶¶ 71, 83.) The request Sura sent to Nygren was reviewed and responded to by nurse Travis Brady (ECF No. 52 at 2); Nygren states that she never received the request and was unaware that Sura's medical and psychological needs were not being met. (ECF No. 36 ¶ 104.) Similarly, Aldana does not recall receiving a request from Sura and was unaware that Sura was being denied medical or psychological care. (ECF No. 36 ¶¶ 93; 96-97.)

On May 2, 2014, Malone sent a note to one of the prison psychologists (not a defendant) asking him to investigate and respond to Sura's concerns. (ECF No. 36 ¶¶ 84, 86.) On May 5, 2014, Kemper sent a note to Malone and directed him to forward Sura's request to the Housing Unit Director, whom Kemper believed was in a better position to investigate Sura's concerns. (ECF No. 36 ¶¶ 72, 73.)

Sura saw prison psychiatrist Dr. Parikh (not a defendant) "for under two minutes" on May 2, 2014. (ECF No. 36 ¶ 48; ECF No. 1 at 3.) Dr. Parikh prescribed clonidine and amitriptyline, the medications that Sura had requested. (ECF No. 36 ¶¶ 84, 86.) Sura informed Dr. Parikh that he wanted to be cautious about over-medicating,

4

Case 2:15-cv-00623-WED   Filed 01/28/16   Page 4 of 10   Document 54

so he was prescribed a low dose. (ECF No. 36 ¶ 49.) The dosage was increased shortly after the first appointment at Sura's request. (ECF No. 36 ¶ 50.)

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge,

set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

### III. ANALYSIS

Section 1983 makes public employees liable "for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009); see *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). In addition, "top-level administrators are entitled to delegate to others the responsibility for specific prison functions, including providing medical care." See *Burks*, 555 F.3d at 595. A supervisor can be found personally liable for a constitutional violation *only if he knows about the actions* causing the violation and facilitates them, approves them, condones them, or turns a blind eye to them. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

The focus of Sura's complaint is that, despite submitting multiple HSRs and PSRs in late February/early March requesting that he be placed back on his medication, he was not seen by a psychiatrist until nearly two months later. However, Kemper, Malone, Aldana, and Nygren did not learn of Sura's frustrations until April 30, 2014 (ECF No. 1-1 at 4-5; ECF No. 43 ¶ 12; ECF No. 42 ¶ 13); Sura had his appointment with psychiatrist Dr. Parikh two days later on May 2, 2014. Sura does not rebut the defendants' statements that they were unaware of his difficulties in obtaining an appointment prior to receiving his complaints. Thus, the period of delay that the court must consider in determining

whether these defendants were deliberately indifferent to Sura's allegedly serious medical needs is two *days*, not two *months* as alleged by Sura.

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). This standard contains both an objective element (i.e., that the medical needs be sufficiently serious) and a subjective element (i.e., that the officials act with a sufficiently culpable state of mind). *Id.* A plaintiff must show that the defendants had "*actual* knowledge" that he was "at risk of serious harm." *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 778 (7th Cir. 2014) (emphasis in original); *Belbachir v. County of McHenry*, 726 F.3d 975, 982 (7th Cir. 2013) (affirming dismissal of nurse because she had no knowledge that prisoner was suicidal). A delay in treatment may constitute deliberate indifference; "the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Id.* (citations omitted).

The court finds that the record does not support a conclusion that the defendants addressed Sura's situation with deliberate indifference. In Sura's requests to Kemper, Malone, Aldana, and Nygren, he stated only that he had "mental health problems" and had "been trying to get back on his meds." (See ECF No. 50-1 at 11, 12.) These complaints did not put the defendants on notice that Sura was in immediate risk of serious harm. Nothing in Sura's complaints indicated a deteriorating condition, life-threatening

7

Case 2:15-cv-00623-WED   Filed 01/28/16   Page 7 of 10   Document 54

symptoms, or a psychological emergency, which would have arguably demanded urgent attention. As such, even assuming that Sura suffered from an objectively serious medical condition, based on the limited information Sura communicated to the defendants, Sura having to wait an additional two days before obtaining an appointment does not support a finding that the defendants were deliberately indifferent to his medical needs. Sura expressed frustration to the defendants about having to wait so long for an appointment, and two days later he had one. Given the nature of Sura's complaint to the defendants and Sura's acknowledgment that his symptoms did not increase in intensity while he waited for his appointment (ECF No. 36 ¶¶ 45-46), the court concludes that the additional two-day delay was tolerable. Sura has not sued the individuals who were responsible for the initial two-month delay, and § 1983 liability is premised only on an individual's own misdeeds, not the misdeeds of others. See *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002) (holding that sheriff could not be held responsible for actions of guards who were not named as defendants).

Sura also complains that when he finally saw Dr. Parikh on May 2, 2014, his appointment lasted under two minutes, and that although Dr. Parikh prescribed medication as he requested he was unable to talk about his problems. However, Sura did not name Dr. Parikh as a defendant and these allegations do not state claims against Kemper, Malone, Aldana, or Nygren.

8
Case 2:15-cv-00623-WED   Filed 01/28/16   Page 8 of 10   Document 54

## IV.   CONCLUSION

**WHEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 34) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court **DISMISS** this action and enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment.  The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 28th day of January, 2016.

*William E. Duffin*
WILLIAM E. DUFFIN
U.S. Magistrate Judge